IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

EDISON MELENDEZ-OJEDA,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CIVIL NO. 11-1485 (CVR)

**OPINION AND ORDER**

**INTRODUCTION**

Plaintiff Edison Meléndez Ojeda (hereafter plaintiff "Meléndez") filed this action seeking judicial review of the final decision of defendant, the Commissioner of Social Security (hereafter "Commissioner"), denying the application for a period of disability and ensuing disability benefits. (Docket No. 1). On December 13, 2011, the Court referred the matter to a Magistrate Judge since plaintiff consented to submit the case to the jurisdiction of a Magistrate Judge. (Docket Nos. 10 and 12).[1]

On December 13, 2011, the Commissioner answered the Complaint and filed a copy of the administrative record. (Docket Nos. 8 and 9). On March 13, 2012, plaintiff's legal representative Atty. Salvador Medina de La Cruz filed a memorandum of law. (Docket No. 18). On May 9, 2012, the Commissioner filed his memorandum. (Docket No. 23).

Through plaintiff's memorandum of law, he argues the Court should set aside the administrative determination denying disability and/or remand for additional

[1] Title 28, United States Code, Section 636(b)(1)(A), (c)(1) and (c)(2); Fed.R.Civil P. 73(a). The government has provided a general consent for Magistrate Judges to entertain Social Security appeals.

consideration because the administrative determination was not supported by proper quantum of evidence. The determination disregarded medical evidence, as well as rested on the vocational expert's testimony who was not provided with proper hypothetical questions.[2] The Commissioner's memorandum of law opposed plaintiff Meléndez' arguments insofar as the alleged medical evidence which was disregarded did not have controlling weight.

Upon examination of the pleadings filed, this Magistrate Judge discusses below the pending motions and the appropriate disposition of this action.

**BACKGROUND**

Plaintiff Meléndez filed an application for a period of disability and entitlement to disability benefits claiming he became disabled by June 14, 2007. He remained insured under the Social Security Act up to September 30, 2010. Plaintiff Meléndez was found to suffer from lumbosacral strain, L2-L3 discogenic disease, herniated disc at L4-L5 and L5-S1 levels, S1 radiculopathy to the right, and a major depressive disorder.

Plaintiff Meléndez' application was denied initially and, upon reconsideration, for which reason the requested administrative hearing was held. The Administrative Law Judge (hereafter the "ALJ"), after considering the testimony of a vocational expert, as well as evidence from consulting medical advisors and plaintiff's medical record determined plaintiff Meléndez was not under disability. This decision was affirmed by the Appeals Council.

---

[2] U.S.C. Sec. 405(g) provides for judicial review of the final decision of the Commissioner. "... [t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment without remanding the cause for rehearing". Section 205(g).

**ADMINISTRATIVE AND PROCEDURAL HISTORY**

Plaintiff Meléndez waived being present at the administrative hearing held on June 7, 2010. The presiding ALJ then determined that plaintiff Meléndez: 1) last met the insured status requirements of the Social Security Act through September 30, 2010, that is, the date he is considered to be last insured; (2) had not engaged in substantial activity since the date of alleged disability and through the date of last insured; 3) had severe impairments such as lumbosacral strain, L2-L3 discogenic disease, herniated discs at L4-L5 and L5-S1 levels by magnetic resonance imaging (MRI) study, S1 radiculopathy to the right by electromyogram (EMG) and mild major depressive disorder. (Docket No. 8, Transcript, p. 17).

The ALJ further applied the evaluation process mandated by law, insofar as also concluding that plaintiff Meléndez also did not have an impairment or combination of impairments that met the requirement of the Listing in 20 CFR Part 404, Subpart P, Appendix 1; upon consideration of the record he had the residual functional capacity to perform the full range of light work; but was unable to perform any past relevant work. Still, being a younger individual, that is, 33 years old at the time of disability, with limited education and able to communicate in the English language, applying the GRID plaintiff Meléndez was found not disabled regardless if there was transferability of job skills. Finally, the ALJ determined there were jobs which existed in significant numbers in the national economy that plaintiff Meléndez could perform. Through the testimony of the vocational expert these jobs included ticketer and classifier. These jobs could be performed

even if Meléndez was prevented from performing complex work activity because of his mental condition. (*Id.*, p. 24).

The ALJ referred plaintiff was treated for his physical conditions under the auspices of the State Insurance Fund through February 19, 2009 and by Dr. Edison Vélez through October 21, 2009. On August 29, 2008, he underwent a consultative neurological evaluation by Dr. Samuel Méndez. The record from treating sources did not reveal swelling, deformities, increased heat or significant limitation of the range of motion. (*Id.*, p.17). An MRI study of the cervical spine of June 27, 2007 was compatible with disc herniation at L4-L5 and L5-S1 levels. A physical examination by Dr. Theodore Alick and neurological evaluations by Dr. Méndez did not reveal significant or persistent sensory deficits, muscular weakness, motor atrophy or reflex abnormalities. Radiological examination of the lumbar spine did not disclose marked degenerative changes. A residual functional assessment, dated February 18, 2009 by Dr. Eileen Zayas, family physician for the state agency, and non-examining physician found Meléndez capable to lift and carry up to 20 pounds occasionally and 10 pounds regularly, sit and stand and walk for 6 hours, balance, kneel and crouch occasionally and perform sustained work activity on a regular basis. The ALJ adopted such residual functional capacity assessment as being supported by a longitudinal analysis of the evidence on the record as a whole. (Docket No. 8, Transcript, p. 18; Exhibits 1F, 2F, 8 F, 22F, 25F and 6F).

In regard with the mental condition, the ALJ indicated Meléndez has being treated for his major depressive disorder at the ROVICO Behavioral Care and Treatment program (hereafter "ROVICO") and by Dr. Ronald Malavé, a psychiatrist. Meléndez was also

evaluated by a consultative psychiatrist, Dr. Alberto Rodríguez Robles by April 22, 2009. (Docket No. 8, p. 18). The ALJ stated Dr. Malavé did not submit progress notes but rather filled out a questionnaire with a checklist of signs and symptoms and marking mental ability and functional limitations. The diagnosis was of severe major depressive disorder. (*Id.*). Dr. Malavé did not list the dates of the treatment nor explained the data from which he based the diagnostic impression and conclusion. Hence, the ALJ indicated being unable to analyze the pattern of treatment and its effect on activities of daily living and capacity to perform work-related activities. Thus, the ALJ's analysis was limited to the record and the progress notes of ROVICO. (*Id.*, p. 19; Exhibit 24F).

ROVICO's record shows admission date of November 6, 2008, after plaintiff filed his application for disability benefits. The diagnostic impression was of recurrent major depressive disorder. Still, the ALJ gave weight to notes dated March 10, 2010, the last mental evaluation of record, which described Meléndez as alert, logical, coherent, relevant and well oriented in the three spheres, with intact thought process and normal cognitive functions. (*Id.*, p. 19).

A consultant psychiatrist, Dr. Rodríguez Robles, found Meléndez depressed, with psychomotor retardation, and diagnosed a severe single episode major depressive disorder with poor prognosis. Mental examinations referred to the patient being logical, coherent and well oriented, with average intelligence. Memory was inadequate. Plaintiff provided a good history of his health status and educational and vocational profiles. Judgment was adequate. (Docket No. 8, Transcript p. 8; Exhibit 9F).

The ALJ indicated that, as to Meléndez' mental disorder, it did not meet the severity of the Listing of Impairments and only resulted in moderate restrictions of activities of daily living, moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistent and pace, without episodes of decompensation. These were adopted by the ALJ as assessed by Dr. Zulma Mc Dougal, clinical psychologist from the state agency Disability Determination Program. (Docket No. 8, Transcript p. 20; Exhibit 10F). Dr. Mc Dougal concluded Meléndez was able to remember and carry out both simple and complex instructions, sustain attention and concentration and relate adequate with others. (*Id.*).

Based on the ALJ's longitudinal analysis and from his examination of the medical evidence on the whole record, he concluded plaintiff Meléndez' mental condition was non-severe, that it was mild, and did not impose significant limitations in the capacity to perform work related activities. (*Id.*). The ALJ stated giving Dr. Mc Dougal's assessment due deference as formulated on February 18, 2009, although acknowledged by said time psychiatric evaluations of October 2008, one of November 2009 and of March 2010 progress notes were not yet available . (*Id.*). Thus, the ALJ did not give proper deference to Dr. Malavé's diagnostic impression or to the consultative evaluation of Dr. Rodríguez Robles. (*Id.*).

**LEGAL ANALYSIS**

The Court's review is limited to determine whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence. *See* Manso-Pizarro v. Secretary of Health and Human Services, 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's findings

of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); Da Rosa v. Secretary of Health and Human Services, 803 F.2d 24, 26 (1st Cir. 1986); Ortiz v. Secretary of Health and Human Services, 955 F.2d 765, 769 (1st Cir. 1991).

To establish entitlement to disability benefits, the burden is on the claimant to prove that she is disabled within the meaning of the Social Security Act.  *See* Bowen v. Yuckert, 482 U.S. 137, 146-47, n. 5 (1987).  It is well settled law that a claimant is disabled under the Act if he/she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a).  A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his/her previous work but, considering age, education, and work experience, cannot engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he/she lives, or whether a specific job vacancy exists, or whether he/she would be hired if he/she applied for work.  42 U.S.C. § 423(d)(2)(a).

In making a determination as to whether a claimant is disabled, all of the evidence in the record must be considered.  20 C.F.R. § 404.1520(a).  A five-step sequential evaluation process must be applied to every case in making a final determination as to whether a claimant is or not disabled. 20 C.F.R. §§ 404.1520; *see* Bowen v. Yuckert, 482

U.S. 137, 140-42 (1987); Goodermote v. Sec. of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982).

Through step one the ALJ determines whether the claimant is engaged in "substantial gainful activity." If he/she is, disability benefits are denied. 20 C.F.R. § 404.1520(b). If not, the decision-maker proceeds to step two, through which it is determined whether the claimant has a medically severe impairment or combination of impairments. *See* 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, through which the ALJ determines whether the impairment prevents the claimant from performing the work he/she has performed in the past. If the claimant is able to perform his/her previous work, he/she is not disabled. 20 C.F.R. § 404.1520(e). If it is determined that the claimant cannot perform this work, then the fifth and final step of the process demands a determination on whether claimant is able to perform other work in the national economy in view of the residual functional capacity, as well as age, education, and work experience. The claimant would be entitled to disability benefits only if he/she is not able to perform

other work. 20 C.F.R. § 404.1520(f). The ALJ in the instant case examined and analyzed plaintiff's case following all five steps above described.

The claimant has the burden, under steps one through four, of proving that he/she cannot return to his/her former employment because of the alleged disability. Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir. 1991).

In the present case, the ALJ determined plaintiff was unable to perform his previous past relevant work and, thus, continued from the examination after said step four consideration. By determining the residual functional capacity for light and unskilled type of work, and through the testimony of a vocational expert at the administrative hearing, the ALJ concluded there were jobs available in the national economy within plaintiff's residual functional capacity. The ALJ opined plaintiff Meléndez was not under disability and the Appeals Council thereafter affirmed.

Counsel for plaintiff, Atty. Medina De-La-Cruz, argues the ALJ failed to provide valid reasons to disregard the opinion of the treating physician and even those of the consultative physicians regarding plaintiff Meléndez conditions and limitations. Plaintiff's counsel contends the ALJ failed, as well in presenting the hypothetical questions to the vocational expert at the administrative hearing, resulting in a lack of substantial support for the ALJ's determination. (Docket No. 18). In regards with the vocational expert, plaintiff's counsel submits the ALJ failed to present all of plaintiff's limitations which resulted from totally disregarding medical evidence. *See* Lyzotte v. Secretary of Health & Human Servs., 645 F.2d 31, 35 (1st Cir. 1981) (if a vocational expert's testimony is to have any probative value, the hypothetical question posed to the expert must contain all the relevant facts).

A review of the record shows the ALJ referred to treating physician's assessment but determined it was not deserving considerable weight. Additionally, the ALJ stated not giving consideration to medical reports dated September 30, 2008 and April 12, 2010, for being after expiration of plaintiff Meléndez' insured status. However, such an averment is incorrect for the ALJ has indicated that Meléndez was insured for disability purposes up to September 30, 2010, for which those medical reports disregarded by the ALJ were indeed well within the relevant time period. Notwithstanding, the ALJ discussed the report and findings of Dr. Vélez regarding plaintiff Meléndez' limitations indicating the conclusions regarding the intensity of the impairments and work related limitations were not supported by Dr. Vélez' own findings and those of the medical evidence on the record as a whole. (Docket No. 8, p. 18).

The Court of Appeals for the First Circuit has indicated an ALJ is "not required to recite every piece of evidence that favored appellant." *See* Stein v. Sullivan, 966 F.2d 317, 319 (7th Cir. 1992) (noting that the level of articulation required is not precise). *See* 20 C.F.R. § 404.1527(d) ("We will always give good reason in our notice of determination or decision for the weight we give your treating source's opinion); SSR 96-2p ("the notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

The Commissioner, through the ALJ, is authorized to give greater weight to testimony and reports of medical experts commissioned by the administrative agency than

to testimony and reports of other medical experts in determining whether a claimant is disabled. Similarly, the ALJ is entitled to reject a treating physician's conclusions that a claimant is totally disabled and accept contradictory medical evidence in the record. Keating v. Secretary of Health & Human Servs., 848 F.2d 271 (1st Cir. 1988). That more weight is given to those reports of non-primary treating physician is not an error of the ALJ. *See* Barrientos v. Secretary of Health & Human Servs., 820 F.2d 1, 2-3 (1st Cir. 1987).

A review of the medical evidence of February 2009 refers to a patient who complained of lot of pain in the lower back which radiated to the right leg. He was received in a wheel chair at the Emergency Room and was using Norflex, Flexeril and Celebrex for lumbosacral pain. A diagnosis of HNP L4-L5, S5-S1 by MRI study appears since December 11, 2007. (Docket No. 8, Transcript p. 149). By September of 2007, there was already a diagnosis of lumbar radiculopathy at the State Insurance Fund. (*Id.*, p. 156). The patient was referred to a pain clinic because of chronic pain. (*Id.*, p. 150). Previously, by May 2008, Dr. Alberto Rodríguez Rodríguez received the patient because of intense pain, stating that without the pills it radiated to the left leg, felt temperature changes and the leg would loose its strength. (*Id.*, p. 126). In August of 2008, the patient underwent numerous authorized blockage for the pain. (*Id.*, p. 119). Additionally, the record shows the patient was receiving unsuccessfully acupuncture treatment. (*Id.*, p. 117).

Dr. Samuel Méndez Figueroa, a neurologist, submitted an evaluation dated August 29, 2008, referring to low back pain since 2007. An MRI revealed HNP and physical therapy and medication failed to provide relief. The patient was described as alert, oriented, cooperative, with adequate memory. (Docket No. 8, Transcript p. 359). Reflexes

were normal and there was no motor deficit. There was tenderness at the lumbar paraspinal muscles. Strength was of 5/5 symmetrically in all extremities except for psoas 4/5 (limited by pain). Lasegue was negative. Pinpricking and propioception were intact in all areas. Gait was assisted by a cane but was not dependent. (*Id.*, p. 360). The diagnostic impression was of chronic lumbalgia and lumbo sacral syndrome. (*Id.*, p. 361). A roentgenological consultation of the lumbar spine same date showed discogenic disease at the level of L2-L3, mild spondylosis and straightening as secondary to muscle spasm. (*Id.*, p. 367).

Dr. Edgard Vélez Flores also treated Mr. Meléndez from June 23, 2006 through November 7, 2007 because of the HNPN and lumbar spondylosis. (Docket No. 8, Transcript p. 368). The report showed sensory loss, tenderness, muscle spasm, muscle weakness and impaired sleep. It also referred to depression and anxiety being present. Medications produced secondary effect such as dizziness and drowsiness. (*Id.*, p. 369). The residual functional assessment indicated the patient could sit for 45 minutes, stand for 30 minutes and could sit and stand/walk for less than two hours, should alternate positions and take unscheduled breaks. (*Id.*, p. 370).

Dr. Vélez Flores submitted another report as to a last visit on October 21, 2009 for treatment of discogenic disc disease and lumbar spondylosis, HNPN and radiculopathy. (*Id.*, p. 520). It reiterated the prior conditions and symptoms. (*Id.*, p. 522). The progress notes of frequent treatment were submitted but are mostly illegible. (Docket No. 8, Transcript pp. 538-546).

The State Insurance Fund's progress notes of February 19, 2009 refer to severe back pain that did not respond to acupuncture pain treatment. (*Id.*, p. 408).

Dr. Alberto Rodríguez Robles, psychiatrist, submitted a report dated April 22, 2009 upon complaints of depression, lack of concentration and of interest, sleep disturbance, fatigue and being pessimistic. (Docket No. 8, Transcript p. 461). The patient was taking care of his personal hygiene and dressing himself but stayed in the house all day. He was withdrawn and did not share with others. Mr. Meléndez was described as well developed and nourished individual, who cried during the interview, held a cane and showed psychomotor retardation. His affect was restricted and mood was depressed, without suicidal ideas at that time. His intellectual capacity was average without perceptual disturbances. Attention and concentration were diminished; he was easily distracted. Remote, past and recent memory were affected, although oriented in the three spheres. Judgment was adequate. (*Id.*, p. 463). The diagnostic impression was 296.23 under DSM IV.[3] *(Id.*, p. 464).

In regards to the mental condition, Dr. Ronald Malavé referred to admission date of November 6, 2008 through date of last appointment of May 26, 2010 and providing individual, supportive psychotherapy, and pharmacological treatments. The patient's attitude was considered withdrawn with tense behavior and psychomotor retardation. His affect was depressed and irritable. Thought process was coherent, relevant and logical. There were passive suicidal ideas. (Docket No. 8, Transcript, pp. 527-529). Judgment was regular and insight was moderate. He was oriented in the three spheres, with preserved

[3] 296.23 refers to Major Depressive Disorder: Single Episode, Severe Without Psychotic Features.

immediate, recent and remote memory. (*Id.*, p. 530). The summary indicates the patient had a history of severe and chronic depression, along with back pain and diminished concentration, attention and span. The diagnosis was for 296.33, 300.04 and 293.83 under the DSM-IV.[4] This last report was dated May 26, 2010, that is, still within Meléndez' insured status.

Courts give deference to the ALJ's interpretation of the medical record and notice that, although an ALJ is not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion, upon the existence of conflicts in the medical record from the report and sources, it is still not for the Court to resolve same. *See* Nguyen v. Chater, 172 F.3d 31 (1st Cir. 1999); Lizotte v. Secretary of Health & Human Servs., 654 F.2d 127 (1st Cir. 1981) (the resolutions of conflicts in the evidence and the determination of the ultimate question of disability is for the ALJ, not for the doctors or for the courts). *See also* Rodríguez v. Secretary of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

However, in the present case as to plaintiff Meléndez, the ALJ failed to recognize the medical record contained illegible progress notes. Additionally, the ALJ made some reference as to plaintiff having a credible pain condition, together with the mental impairments, which are not contradicted by the record. The ALJ on numerous occasions mentioned his longitudinal analysis as to the objective medical evidence, although disregarding treating sources and some evaluations still within the insured period up to

[4] DSM-IV provides reference that: 296.33 is classified as Major Depressive Disorder, Recurrent, Severe Without Psychotic Features; 300.04 is a Dysthymic Disorder Mood Disorders; and 293.83 is a Mood Disorder Due related to indicated General Medical Condition.

September 30, 2010. (*Id.*, p. 22). As such, the hypothetical questions submitted to the vocational expert did not properly represent the work frame as to plaintiff's combination of exertional and non-exertional conditions, for these were limited to what were the jobs available for an individual who could perform the full range of light work. (*Id.*, pp. 47-48). The ALJ further indicated to the vocational expert the absence of non-exertional limitations, since he considered plaintiff Meléndez as able to remember and carry out both simple and complex instructions, sustain concentration for a two hour period and relate adequately with others. On such premise the vocational expert indicated plaintiff could perform the jobs described as classifier and ticketer, since there were no significant deficits in his intellectual functions. (*Id.*, p. 49).

Hypothetical questions to a vocational expert as to existence of jobs that existed and a claimant could perform may be considered substantial evidence to support the administrative decision. However, if a vocational expert's testimony is to have any probative value, the hypothetical questions posed to the expert must contain the relevant facts. *See* Lizotte v. Sec. Health & Human Serv., 654 F.2d at 131. The ALJ's hypothetical questions to a vocational expert should convey the claimant's limitations precisely in order to yield relevant responses. *See* Maldonado v. Secretary of Health and Human Services, 972 F.2d 337, (1st Cir. 1992), citing to Arocho v. Secretary of Health and Human Services, 670 F.2d 374, 375 (1st Cir. 1982). "A vocational expert's testimony can not constitute substantial evidence to support an ALJ's determination as to a claimant's disability status unless it accurately reflects all the claimant's limitations...." Cooper v. Bowen, 880 F.2d 1152, 1158 n.13 (9th Cir. 1989); Whitman v. Bowen, 785 F.2d 262, 263-64 (8th Cir. 1986).

To review the final decision of the Commissioner courts must determine if the evidence of record meets the substantial evidence criteria. Substantial evidence is "more than a mere scintilla and such, as a reasonable mind might accept as adequate to support a conclusion". Richardson v. Perales, 402 U.S. 389 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197 (1938). The findings of the Commissioner as to any fact are conclusive, if supported by the above stated substantial evidence.[5] The court would set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on a legal error. *See* Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Rodríguez, 647 F.2d at 222.

In view of the foregoing, this Magistrate Judge opines the decision of the Commissioner is not supported by substantial evidence in the record as whole, insofar as plaintiff's mental impairment and combination with other non-exertional limitations imposed by pain, and exertional conditions imposed by uncontroverted evidence of discogenic disc disease with radiculopathy and disc herniation. For these reasons the case is remanded for further consideration, which may include a medical advisor and consonant hypothetical questions to a vocational expert.

## CONCLUSION

For the reasons above discussed, this United States Magistrate Judge, having carefully perused the record and considered whether there was no substantial evidence in support of the decision rendered by the Commissioner concludes the Commissioner's

[5] Falu v. Secretary of Health & Human Servs., 703 F. 2d 24 (1st Cir. 1983).

decision is not supported by substantial evidence. As such, the Commissioner's decision is remanded for further consideration.

Judgment to be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 22nd day of October of 2012.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ RIVE
UNITED STATES MAGISTRATE JUDGE